# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Devices A, B, and C, more fully described in Attachment ) Case No. **18-m-54**
A. )
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Devices A, B, and C, more fully described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 18, United States Code, Sections 922(g)(5) and 2
Title 21, United States Code, Sections 841(a)(1) and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Scott Marlow, DEA Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: **May 2, 2018**

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. Prior to my current assignment, I was employed as a police officer with the City of West Allis, Wisconsin for approximately nine (9) years. In the course of my experience, I have and continued to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices. I have had formal training in the investigation of drug trafficking; I have worked with numerous informants in the investigation of drug trafficking in the Milwaukee area; I have participated in the execution of numerous search warrants in which controlled substances, firearms and drug paraphernalia were seized, and counterfeit monies; I am familiar with the street name of various drugs in the Milwaukee area including marijuana, cocaine, and heroin. Based on all this, I am familiar with narcotics traffickers' methods of operation and am aware of the following:

a. I have utilized informants to provide information and evidence when investigating various criminal offenses. Through informant interviews, consensually recorded conversations, and extensive debriefings of individuals involved criminal activity, I have learned about the manner in which criminal individuals and organizations function in Wisconsin as well as in other areas of the United States;

b. I have relied upon informants to purchase controlled substances, purchase firearms, and purchase other evidence;

c. I have extensive experience with individuals who attempt to hide their illegal proceeds by the use of nominees to purchase assets, use of extensive cash purchases, use of cash payment of bills, use of safety deposit boxes, use of trusted associates to store bulk cash, and the use of legitimate businesses to report the illegal profits as legitimate business income;

d. Individuals attempting to conceal their income or illegal activities will frequently place assets in the names of friends, relatives, or close associates to avoid detection of these assets by the Internal Revenue Service and other governmental agencies. Even though these assets are in the names of others, their true owners will continue to exercise dominion and control over the use, ownership, and disposition of these assets;

e. I am familiar with the language utilized over the telephone to discuss various criminal activities and know that the language is often limited, guarded and coded;

f. I know that individuals involved in drug trafficking and individuals involved in illegal activity often use electronic equipment, cellular and land line telephones, and the internet to conduct their criminal operations; and

g. I know that criminals commonly have in their possession and at their residences and other locations where they exercise domain and control, business and financial records, cash, valuables, and records relating to assets.

3. The facts contained in this affidavit are known to me through my personal knowledge, training, and experience, through information provided to me by others, and through information provided to me by other law enforcement officers and my review of official law enforcement records and reports which I consider to be truthful and reliable.

4. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5. Because this affidavit is submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

## IDENTIFICATION OF THE DEVICES TO EXAMINED

6. The property to be searched is as follows:

   a. A black Samsung Galaxy, hereinafter "**Device A**"
   b. A blue Alcatel flip phone, hereinafter "**Device B**;" and
   c. A black and grey ZTE flip phone, hereinafter "**Device C**."

7. **Devices A, B,** and **C** are currently located at Milwaukee's High Intensity Drug Trafficking Area (HIDTA), 801 W. Michigan, Avenue, Milwaukee, Wisconsin.

8. The applied-for warrant would authorize the forensic examination of Devices A, B, and C for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

### A. Background

9. On December 12, 2017, at approximately 2 p.m., under the direction and control of case agents, the CI purchased 50 grams of heroin from Francisco Viera for $3500 at 3205 S. 26th Street, Milwaukee, WI. On January 8, 2018, at approximately 6:30 p.m., under

the direction and control of law enforcement, the CI purchased 20 grams of heroin from Viera for $1,400 at an apartment complex located at 2459 South 43rd Street, Milwaukee, WI. During both transactions, case agents met with the CI at a pre-determined location. The CI and the CI's vehicle were searched for contraband, rendering negative results. The CI was debriefed following each transaction, which was verified by reviewing the video recording device with which the CI was equipped during the controlled buys.

10. The CI has been cooperating with law enforcement since December 2017. The CI has a prior felony conviction for possession with intent to distribute cocaine. In August 2015, the CI was arrested by affiant for possession with intent to distribute cocaine and heroin. I believe that the CI's information is credible and reliable for the following reasons. First, the CI has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking, which case agents have independently verified. Second, the CI has made statements to case agents that are against his/her penal interests, in that the CI has admitted his/her involvement in drug trafficking activities in the past. Third, the CI is a cooperating defendant assisting case agents in hope for favorable consideration regarding a pending felony drug case. Finally, CI has had an adequate opportunity to directly observe the events discussed or has heard conversations directly from the individuals discussed herein.

11. On January 30, 2018, the CI, acting under the direction and control of law enforcement, arranged to meet with Viera to discuss a future drug transaction of kilograms of heroin. Viera instructed the CI to follow him to the address of 2459 South 43rd Street. Viera was observed driving a 2009 silver Nissan Maxima, displaying Wisconsin registration

plate 833-UCG. Per the Wisconsin Department of Motor Vehicles, the 2009 Nissan Maxima is registered to Martina Valdivia at 2851 S. 46th Street, Milwaukee, WI. Case agents followed Viera and CI to the address of 2459 South 43rd Street, where case agents observed CI and Viera exit their vehicles and enter the building together.

12. Case agents monitored the live recording and heard Viera inform the CI that he (Viera) recently received counterfeit money from an unknown person as result of a two-kilogram cocaine transaction. Viera instructed the CI to help find the unknown person because the unknown person is an acquaintance of the CI. Viera said that the CI needed to locate the unknown male because if they don't get their money back, harm would come to the unknown person. Viera and the unknown Hispanic male demanded that the CI show them the house of where the CI's acquaintance lived.

13. Viera displayed to the CI a purported amount of $63,000 in counterfeit U.S. monies, which was payment for the two kilograms of cocaine. In addition, Viera told the CI during their conversations that he (Viera) had plenty of cocaine but that he was currently out of heroin.

14. Thereafter, while conducting surveillance at the address of 2459 South 43rd Street, case agents observed Viera and an unknown Hispanic, later identified as Roberto Arroyo-Martinez, exit the apartment complex. Case agents observed the CI get into the CI's car and Viera and the unknown male get into Viera's silver Nissan Maxima. The CI and Viera then exited the parking lot, with Viera following the CI. Case agents conducted a traffic stop on the CI to remove the CI from volatile situation, making sure that Viera and Arroyo-Martinez observed the traffic stop.

15. Later that day, at approximately 6:45 p.m., case agents observed the 2009 Nissan Maxima registered to Martina Valdivia parked outside a restaurant at 2635 N. Mayfair Rd, Wauwatosa, WI. At approximately 7:45 p.m., case agents observed Viera and Arroyo-Martinez exit the restaurant and approach the Nissan Maxima. Case agents arrested Viera and Arroyo-Martinez and seized the vehicle.

**B.     Firearms Seizure**

16. On January 31, 2018, case agents conducted an inventory search of the 2009 Nissan Maxima registered to Valdivia. Located inside the trunk of the vehicle, case agents located a Smith and Wesson .40 caliber semi-automatic handgun and a Berretta 9mm semi-automatic handgun bearing serial number S38054C. Also seized from the vehicle was an undetermined amount of counterfeit U.S. Currency.

17. On January 31, 2018, while case agents were transporting Viera to the U.S. Marshals office, case agents informed Viera that two handguns were seized from his vehicle. Viera stated that only one of the firearms, the Beretta, belonged to him. Viera stated that the other firearm belonged to Arroyo-Martinez.

18. According to trace results for the two firearms recovered from the 2009 Nissan Maxima registered to **Valdivia**, the black Berretta semi-automatic handgun bearing serial number S38054C was purchased on August 23, 2016 by an individual named S.O.

19. Case agents interviewed S.O., who stated that he met Viera approximately six years ago at an auto dealership in West Allis, Wisconsin. S.O. stated that in Fall 2016, he met with Viera and Valdivia to sell them a Springfield XD semi-automatic handgun. S.O. positively identified photographs of Viera and Valdivia. S.O. stated that Valdivia informed

S.O. that Viera was allowed to purchase the firearms, and that he was a legal resident. Valdivia showed S.O. her legal status paperwork. Ultimately, S.O. sold Viera the Springfield XD semi-automatic handgun for approximately $500. According to S.O., he handed the firearm directly to Viera during this transaction.

20. S.O. stated that several months after the first transaction, sold Viera a DPMS .223 semi-automatic rifle, a Taurus semi-automatic handgun, and a Berretta handgun. S.O. informed case agents that the transaction occurred in an office on South 56th Street, and Viera was alone at the time. S.O. further stated that he would not have sold the firearms to Viera had he known that Viera was unlawfully in the United States.

C. **Search Warrant**

21. On February 5, 2018, case agents obtained a federal search warrant for 2851 South 46th Street, Milwaukee, Wisconsin. According to publicly available records, the residence is owned by Martina Validivia. During the execution of the search warrant, case agents located empty weapons boxes, empty handgun and rifle magazines, and various types of ammunition, including 9mm cartridges, in the garage. Case agents also located a suspected drug ledger in the living room and a digital scale in the basement.

22. Case agents interviewed Valdivia at the DEA Office, who stated that she resides at and owns the residence on South 46th Street. Valdivia stated that she and Viera have been married for several years and they have one minor child in common. Validivia stated that Viera owns a black handgun, and that he was not allowed to bring it into the house because of the children. Valdivia stated that Viera had the gun for several years. Case agents asked Validivia about several vehicles registered in her name, and she stated that the

vehicles were owned by Viera, but registered in her name because Viera could not afford to register them. Validivia stated that, although she and Viera lived together at South 46th Street, Viera was currently staying at an apartment on South 43rd Street, Milwaukee, WI.

23. Validivia further stated that several years ago, when Viera was in the custody of U.S. Immigration, she posted the bail to have him released. Validivia informed case agents that Viera is currently fighting removal proceedings. Based on records from Immigration and Customs Enforcement (ICE), case agents are aware that on August 14, 2014, Viera was taken into custody for an immigration violation and removal procedures were initiated. On August 19, 2014, Valdivia posted $7,000 to have Viera released pending his court proceedings.

24. A search of the ICE database reveals that Francisco Viera-Espino is a citizen of Mexico and an illegal alien in the United States. On February 13, 2018, Viera-Espino was indicted by a grand jury sitting in the Eastern District of Wisconsin with drug and gun offenses, to include illegal alien in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2).

### D. Traffic Stops in Nebraska and Wyoming

25. Based on law enforcement reports, case agents are aware that, on March 8, 2017, a Nebraska Douglas County Sheriff's Deputy conducted a traffic stop of a 2008 Buick Encore, displaying Wisconsin registration 833-UCG on I-80. A query of the registration of the vehicle revealed the vehicle was registered to Martina Valdivia at 2851 S. 46th Street, Milwaukee, Wisconsin. The Deputy made contact with the driver, Viera, who stated he was traveling to Denver, Colorado. Upon a search of the vehicle, law

enforcement located a loaded Taurus 9 mm semi-automatic pistol, bearing serial number TIY86855, an additional magazine containing twelve 9 mm rounds, and a plastic bag containing twenty-five 9 mm rounds of ammunition in the dashboard. According to trace records, S.O. purchased this Taurus pistol from Shorty's Shooting Sports in West Allis, WI in January 2016.

26. Case agents are also aware that on December 9, 2017, a Wyoming State Trooper conducted a traffic stop on Highway I-80 in Albany County, WY, of a 2009 silver Nissan sedan, displaying Wisconsin registration 833-UCG. A query of the registration of the vehicle revealed the vehicle is registered to Martina Valdivia at 2851 S. 46 Street, Milwaukee, Wisconsin. The investigating trooper made contact with the driver, Rafael Espino-Velazquez. During the traffic stop, Espino-Velazquez stated that he was traveling from Fresno, California, and en-route to Wisconsin to visit his cousin, "Francisco," for the holidays. Espino-Velazquez further stated that "Francisco's" wife, Martina Valdivia, is the owner of the vehicle. As a result of the traffic stop, troopers conducted a search of the vehicle and seized one kilogram of cocaine hidden in a natural void behind the center counsel.

E. **Arrest of Martina Valdivia**

27. On April 30, 2018, the Honorable William E. Callahan, Jr., United States Magistrate Judge, issued a criminal complaint charging Martina Valdivia with aiding and abetting the possession of a firearm by an illegal alien, namely Francisco Viera, in violation of Title 18, United States Code, Sections 922(g)(5), 924(a)(2), and 2.

28. On May 1, 2018, case agents arrested Martina Validivia. At the time of her arrest, Valdivia had three cellular telephones in her purse: a black Samsung Galaxy (**Device A**), a blue Alcatel flip phone (**Device B**), and a black and grey ZTE flip phone (**Device C**). Valdivia admitted to owning all of the Devices and further stated that two of the phones had the same phone number.

29. That same day, Valdivia was interviewed. Valdivia stated that she was never present with Viera when he purchased any firearms. Case agents showed Valdivia a picture of S.O., at which point she stated that she has never seen S.O. Yet, as discussed above, case agents are aware that S.O. indicated that before the firearms sale, he observed Valdivia bring Viera lunch at work, where he (S.O.) was also employed.

30. Valdivia initially denied any contact with Viera's friends since Viera's arrest in January 2018. Case agents are aware that Cirino Fernando Velasco is a large-scale drug trafficker in the Milwaukee Metropolitan area, who is reportedly working with Viera. In November 2015, law enforcement seized fifteen kilograms of cocaine and arrested two couriers of Velasco. Based on toll analysis, case agents believe that Velasco is using telephone number (414) 335-0486. Telephone records for (414) 335-0486 reflect that there were 771 contacts with Valdivia's number, (414) 699-2043, between January 14, 2018 and March 10, 2018. Valdivia later admitted to case agents that since Viera's arrest, Velasco has been in contact with her via text messages to inquire about how she is doing. Case agents are aware that during her interview on February 5, 2018, Valdivia indicated that, although she knew Velasco, she did not have his phone number.

31. Finally, Valdivia denied knowledge of Viera's drug trafficking. However, case agents are aware that a suspected drug ledger, a digital scale, and documents relating to Rafael Espino-Velazquez's December 2017, arrest in Wyoming were recovered from Valdivia's residence.

32. **Devices A, B,** and **C,** are currently in the lawful possession of the DEA and are currently in storage at Milwaukee's High Intensity Drug Trafficking Area (HIDTA), 801 W. Michigan, Avenue, Milwaukee, Wisconsin. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into DEA's possession.

## TECHNICAL TERMS

33. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking,

sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-

processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

34. Based on my training, experience, and research, I know that Devices A, B, and C have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA and one or all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

36. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and

when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Devices A, B, and C consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

39. Based upon the above information, there is probable cause to believe that (1) on January 30, 2018, Martina Valdivia committed the crime of aiding and abetting the possession of a firearm by an illegal alien, namely Francisco Viera, in violation of Title 18, United States Code, Sections 922(g)(5), 924(a)(2), and 2; and that (2) Martina Valdivia is involved in the crime of aiding and abetting a drug trafficking conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 2. There is also probable cause for a search warrant authorizing the examination of **Devices A, B,** and **C**, which are more particularly described in Attachment A, to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is:

    a.    A black Samsung Galaxy, hereinafter "**Device A**,"

    b.    A blue Alcatel flip phone, hereinafter "**Device B**;"

    c.    A black and grey ZTE flip phone, hereinafter "**Device C**."

Devices A, B, and C are currently located at Milwaukee's High Intensity Drug Trafficking Area (HIDTA), 801 W. Michigan, Avenue, Milwaukee, Wisconsin.

# ATTACHMENT B

1. All records on **Devices A, B,** and **C** described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g)(5) and 2 and Title 21, United States Code, Sections 841(a)(1) and 846 and involve Martina Valdivia, between September 2016 and April 30, 2018, including, but not limited to:

   a. any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of firearms purchased and drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information recording Martina Valdivia's schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records;

   f. Photographs and/or videos depicting Martina Valdivia or Francisco Viera in possession of weapons and/or narcotics; and

   g. Any evidence related to either the ownership, purchase, transfer, or possession of firearms, narcotics, or drug proceeds.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.